IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOUGLAS DEON BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:24-cv-00218-B-BT |
| | § | |
| ROBERT LYONS, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court in this civil rights action under 42 U.S.C. § 1983 is Defendant Robert Lyons's motion for summary judgment based on qualified immunity (ECF No. 67). For the reasons stated, the Court should GRANT Defendant's motion and dismiss Plaintiff's claims with prejudice.

## Background

Plaintiff Douglas Deon Brown, proceeding *pro se*, initiated this lawsuit on January 26, 2024 against the City of Dallas, Dallas Police Department (DPD) Chief Eddie Garcia, and DPD Officers Holly Harris and Robert Lyons. *See generally* Compl. (ECF No. 3). The Court dismissed with prejudice Brown's claims against the City, Chief Garcia, and Officer Harris, and denied Brown leave to amend to add another defendant. *See* FCR (ECF No. 62); Order Accepting FCR (ECF No. 65); Partial J. (ECF No. 66). Accordingly, Officer Lyons is the sole remaining defendant in this action.

Brown's claims arise from his June 4, 2022 arrest, where he alleges he was "arrested and beaten" by Lyons, specifically "punched in the face with [a] closed fist while on the ground handcuffed" and that his "head was raised [and] then slammed into the concrete." Compl. 4. Brown alleges that he lost three teeth and suffered facial lacerations. *Id.* The Court construes these allegations as a Fourth Amendment excessive force claim.

Lyons filed his motion for summary judgment (ECF No. 67), arguing that because he did not violate Brown's constitutional rights, he is entitled to summary judgment, and even if he did violate Brown's constitutional rights, Brown cannot surmount Lyons's qualified immunity defense. *See* Def.'s Br. 12 (ECF No. 68). Lyons submitted the following evidence in support of his motion: the June 4, 2022 Arrest Report (Def.'s App. 1–39), Public Integrity Unit and Internal Affairs Division Investigations (Def.'s App. 40–185), body worn camera (BWC) footage from DPD Officers Byron Luciano, Holly Harris, and Ricardo Grejada (Def.'s App. 186–89), a recording of a prison interview with Brown (Def.'s App. 190), and Lyons's declaration (Def.'s App. 192–93). After the Court granted in part Brown's requests pertaining to summary judgment evidence (ECF No. 89)[1], Brown filed his

_____

[1] After Brown filed numerous requests pertaining to Lyons's summary judgment evidence (ECF Nos. 74, 75, 79, 85, 86), the Court ordered the TDCJ staff to provide the evidence to Brown and permit him a meaningful opportunity to review it pursuant to reasonable policies in place for use of the unit law library and also granted Brown's request to present additional evidence that is in his possession or control—by directing him to present it in his Response to Lyons's motion for summary judgment. Order 1–2 (ECF No. 89). The Court denied Brown's requests

response (ECF No. 92), and Lyons filed his reply (ECF No. 93). Therefore, the motion is ripe for determination.

## Legal Standards

The Court's analysis "involves multiple legal standards, corresponding to qualified immunity, summary judgment, . . . and the Fourth Amendment." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020).

A court will grant summary judgment when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all factual controversies in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

---

to compel Lyons to produce his own BWC footage, because that footage was not preserved and cannot be produced. *Id.* at 2.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* (citing *Skotak*

*v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (cleaned up) (quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). But the affirmative defense of qualified immunity "shields public officials sued in their individual capacities 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Joseph*, 981 F.3d at 328 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Joseph*, 981 F.3d at 329–30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)). So, to shift the burden of proof, "the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment

as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653–54 (5th Cir. 2016)).

Once a public official asserts qualified immunity, the "inquiry is two-pronged." *Thompson v. City of Dallas*, 2024 WL 4999189, at *2 (N.D. Tex. Sept. 24, 2024) (citing *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020)), *adopted by*, 2024 WL 4648155 (N.D. Tex. Oct. 31, 2024). First, "[d]o the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right?" *Id.* (internal citations and quotations omitted). Second, "[w]as the right at issue . . . clearly established at the time of the alleged misconduct?" *Id.* (internal citations and quotations omitted). In other words, "a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (internal quotations and citation omitted). "Particularly applicable in *pro se* cases, 'verified complaint[s] and other verified pleadings serve as competent summary judgment evidence.'" *Thompson*, 2024 WL 4999189, at *3 (citing *Falcon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam)). But evidence that is "neither sworn nor declared under penalty of perjury to be true and correct" "is not competent [summary judgment] evidence." *Thompson*, 2024 WL 4999189, at *4.

Courts may "analyze the prongs in either order or resolve the case on a single prong." *Cunningham*, 983 F.3d at 191 (quoting *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)) (internal quotation marks omitted).

Qualified immunity is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant engaged in the conduct at issue, or (2) the court "skip[s], for the moment, over . . . still-contested matters to consider an issue that would moot their effect if proved." *Haverda v. Hays Cnty.*, 723 F.3d 586, 599 (5th Cir. 2013) (brackets and ellipses in original) (internal quotation marks and citation omitted). If resolution of qualified immunity at the summary judgment stage involves a fact question as to what the defendant did, rather than whether the defendant is immune for what he did, then "the case is inappropriate for summary judgment on the basis that the defendant did not engage in conduct violative of the plaintiff's rights." *Barker v. Norman*, 651 F.2d 1107, 1123–24 (5th Cir. Unit A July 1981). However, a defendant can pretermit the question of whether he engaged in the offending conduct to present the qualified immunity issue because "[t]here is no point in going to trial to determine whether the officer engaged in the complained-of conduct if the officer would be immunized from liability even if he did engage in that conduct." *Id.* at 1124. Even so, where a defendant establishes beyond dispute that he did not engage in the offending conduct, then summary judgment may still be appropriate. *Id.* But "[a] summary judgment on [those] grounds . . . has nothing to do with the qualified immunity defense; rather, it is based on the plaintiff's inability to prove the facts essential to

recovery . . ..” *Id.* (internal citation omitted). Similarly, when the offending conduct, even if it did occur, does not amount to a violation of the plaintiff's constitutional rights, then summary judgment may be proper, though “[that] summary judgment would not be based on qualified immunity grounds, but instead on the lack of a legally sufficient predicate for section 1983.” *Id.*

### Analysis

To satisfy his burden at this summary judgment stage and demonstrate that Lyons is not entitled to qualified immunity, Brown must point to competent summary judgment evidence (1) that Lyons violated a statutory or constitutional right and (2) that the right was clearly established at the time of the conduct. After reviewing the summary judgment evidence, the Court finds that Brown has not carried his burden.

1. <u>The facts do not show that Lyons used excessive force against Brown.</u>

To defeat summary judgment based on Lyons's qualified immunity, Brown “must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling [him] to relief for a constitutional injury.” *Thompson*, 2024 WL 4999189, at *3 (citing *Joseph*, 981 F.3d at 330). That is, “the facts, viewed in the light most favorable to [Brown], show that [Lyons's] conduct violated a constitutional right.” *Cunningham*, 983 F.3d at 190–91.

“When considering this showing, the Court must accept [Brown's] version of the facts (to the extent reflected by proper summary judgment evidence) as true.” *Thompson*, 2024 WL 4999189, at *3 (internal quotations and citations

8

omitted). But "the Court need not accept [Brown's] version of the facts, if that version is blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.* at *4 (internal quotations and citations omitted). "When one party's description of the facts is discredited by the record, [a court] need not take his word for it but should view 'the facts in the light depicted by the [video recordings taken at the scene].'" *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)). The amount of force that is reasonable under the Fourth Amendment "'is not capable of precise definition of mechanical application,'" and "requires careful attention to the facts and circumstances of each particular case." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). To bring an excessive force claim, a plaintiff must establish "'(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). "To gauge the objective reasonableness of the force used by a law

enforcement officer," a court "must balance the amount of force used against the need for force, paying careful attention to the facts and circumstances of each particular case." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (internal citation and quotation marks omitted). The reasonableness inquiry, however, is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"; this allows for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

Brown's claims are rooted in his contention that he was "beaten" by Lyons, specifically "punched in the face with [a] closed fist while on the ground handcuffed" and that his "head was raised [and] then slammed into the concrete," while he was in handcuffs and not resisting. Compl. 4; *see also* Resp. 1 (ECF No. 92) ("Plaintiff after sitting on the ground was rushed by officers who began to use unjustified force. Plaintiff was punched in the face by Defendant with a closed fist while [D]efendant crushes [sic] Plaintiff['s] neck area so forceful[ly] that Plaintiff['s] face is smashed into the concrete."); *see also* Resp. 3 ("The injuries suffered by Plaintiff were those from [Defendant] slamming his knee into Plaintiff's neck, which crushed Plaintiff's face into the concrete."). Brown argues that the body worn camera (BWC) footage "clearly shows [Defendant punch Plaintiff in the face]." Resp. 2. But he also argues that "the one angle [of the footage] that could show Defendant slam his knee into Plaintiff's neck and crush

10

his face into the concrete is the [BWC] footage of Defendant," which was not tagged for retention and was deleted—so it is not evidence before the Court.[2] Resp. 4.

Lyons argues that he is entitled to summary judgment on Brown's Fourth Amendment claim because the evidence proves that he never used excessive force. Def.'s Br. 12. Lyons argues that he "deployed a single strike to [Brown] after multiple verbal warnings did not result in [Brown] complying with officer demands," as is compliant with "DPD policy and Fifth Circuit jurisprudence" on reasonable force. *Id.* at 1. He further argues that none of the three officers' BWC footage shows any officer acting as Brown alleges, and there are no gaps in the video where the alleged conduct could have occurred. *Id.*

Brown's sworn complaint as to his version of the facts is competent summary judgment evidence. So the question becomes whether his allegations are blatantly contradicted by the video footage. *See Edwards v. Oliver*, 2021 WL 881283, at *1 (N.D. Tex. Jan. 19, 2021) ("Qualified-immunity cases often involve competing versions of events—this case is no exception. When the facts are disputed, the Court must use Plaintiff['s] version of the facts, unless it is blatantly contradicted by the record, to evaluate whether the officer is entitled to qualified

---

[2] As addressed in the Court's Order regarding Brown's requests for evidence (ECF No. 89), "it was discovered Lyons activated his body worn camera during an arrest and then failed to properly tag and categorize the video for retention." Def.'s App. 40–185 at 2; *see also* Def.'s App. 40–185 at 11 ("Axon Video Evidence documents Senior Corporal Lyons'[s] body worn camera was activated and uploaded, but not tagged for retention. Lyons's BWC was deleted prior to Internal Affairs receiving this case.") (citing Attachment #14).

immunity."), *adopted by*, 2021 WL 873190 (N.D. Tex. Jan. 19, 2021). And the Court "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012)).

Although the footage from the cameras worn by Officers Grajeda, Luciano, and Harris, *see* Def.'s App. 186, 187, 189, does not provide a perfect view of Lyons's conduct during the short, relevant period when Brown alleges Lyons punched him and slammed his head into the pavement,[3] it certainly contradicts Brown's allegations. Specifically, the BWC footage does not show that Lyons beat Brown "while on the ground handcuffed" nor does it show, Lyons slammed Brown's face on the ground. Rather, the footage shows the responding officers approaching Brown in a motel parking lot. *See* Def.'s App. 186, 189, 192. Lyons and another officer used force against Brown after he did not immediately comply with their commands to stop and "get on the ground." *See* Def.'s App. 186, 189. Lyons forced Brown to the ground by grabbing his arm, *see* Def.'s App. 186, 189, and, when Brown resisted the officers' attempts to place him in handcuffs, Lyons struck Brown in the face. *See id.* Once Brown is in handcuffs, Lyons and the other officers

---

[3] For example, Grajeda's camera faces Lyons's back which obscures Grajeda's view of Lyons's use of force (Def.'s App. 189, 0:53–1:05); Luciano's camera is pointed to the pavement for several seconds during the relevant time of Lyons's use of force (Def.'s App. 186, 0:55–1:01); and Harris's camera is not turned on until after Brown is in handcuffs, after the use of force occurred (Def.'s App. 187).

raised him to his feet. *See* Def.'s App. 186, 189, 192. The entire encounter lasted less than one minute. *See id.*

Moreover, "[w]hen the offending conduct, even if it did occur, does not amount to a violation of the plaintiff's constitutional rights, then summary judgment may be proper, though '[that] summary judgment would not be based on qualified immunity grounds, but instead on the lack of a legally sufficient predicate for section 1983.'" *Sipe v. Norris*, 2019 WL 1430434, at *3 (N.D. Tex. Mar. 6, 2019) (citing *Barker*, 651 F.2d at 1123–24), *adopted by*, 2019 WL 1434564 (N.D. Tex. Mar. 29, 2019). Here, even if Lyons punched Brown and slammed his head into the concrete, as alleged, the conduct would only amount to a violation of Brown's constitutional rights if the use of force was clearly unreasonable—which the Court discusses below. *See Thompson*, 2024 WL 4999189, at *2 ("The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis.").

2.  <u>Brown has not shown that Lyons violated a federal right that was clearly established.</u>

Even if the evidence supported Brown's characterization of Lyons's conduct, he has not carried his burden as to the clearly established prong to overcome Lyons's assertion of qualified immunity.

This analysis requires determining "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the

incident." *Charles v. Grief*, 522 F.3d 508, 511 (citation omitted). In other words, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "[O]vercoming qualified immunity is especially difficult in excessive-force cases . . .. [T]he law must be so clearly established that—in the blink of an eye, []—every reasonable officer would know it immediately." *Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (citation omitted).

"There are two ways to demonstrate clearly established law." *Thompson*, 2024 WL 4999189, at *5 (quoting *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021)). First, the plaintiff can "'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances was held to have violated the Constitution.'" *Joseph*, 981 F.3d at 330 (cleaned up) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)); *see also Morgan*, 659 F.3d at 371–72 (explaining the plaintiff may show that the existence of the right that was allegedly violated was "beyond debate" by "point[ing] to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Second, the plaintiff may ask that the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing

precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 583 U.S. at 64). Meeting this standard typically requires extreme circumstances or particularly egregious facts. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 745 (2002)) (obvious cruelty by prison guards while prisoner was handcuffed to hitching post in the sun for seven hours). "No doubt 'obvious' excessive force cases can arise. But they are so rare that the Supreme Court has never identified one in the context of excessive force." *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1167 (5th Cir. 2021).

The "objective-reasonableness" inquiry is "fact-intensive," and turns on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

Here, the record shows that officers responded to the motel parking lot because a person matching Brown's description attempted to steal a DPD "bait" car, which would constitute a felony offense. Def.'s App. 021; Tex. Penal Code Ann. § 31.03(e)(4)(A). When the officers encountered Brown, they did not know whether he was armed. Def.'s App. 192–93. Brown refused to stop and give the arresting officers his hands despite repeated commands to do so. *Id.* at 193. Brown continued to resist after Lyons and another officer forced him to the ground, and he attempted to move his hands closer to his body, causing them to fear he was

reaching for a weapon. *Id.* at 192–93. Lyons struck Brown once—in the face to gain compliance. *Id.* at 193.

Lyons argues that his "use of force comports with Fifth Circuit jurisprudence on force necessary to effect an arrest," and even if the Court were to find his conduct violated Brown's constitutional right, Brown cannot show such a constitutional right was clearly established at the time of the incident. Def.'s Br. 15, 20. Lyons argues that "no caselaw in this circuit put" him on notice that his actions were clearly established as unconstitutional. *Id.* at 20.

"The Fifth Circuit has found that a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest." *Vasquez v. Landon*, 2020 WL 905360, at *6 (N.D. Tex. Feb. 25, 2020) (citing *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018)). However, a suspect's resistance to arrest alters what the Fifth Circuit considers reasonable force. *See Escarcega v. Jordan*, 701 F. App'x 338, 342 (5th Cir. 2017) ("using force, such as punches, to gain control of a non-compliant suspect is not clearly excessive") (citing *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016)); *see also Candee v. Maldonado*, 2022 WL 2342571, at *6 (S.D. Tex. June 28, 2022) ("But when a detainee is actively resisting arrest and that resistance continues even after he has been wrestled to the ground, the use of strikes and chokeholds may be reasonable."); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 181 (5th Cir. 2021) ("Distraction strikes and even kicks designed to gain compliance to being handcuffed are measured or ascending responses to an actively resisting suspect.")

16

(cleaned up). And "use of force is reasonable if an officer uses measured and ascending actions that correspond [] to [a suspect's] escalating verbal and physical resistance." *Craig v. Martin*, 49 F.4th 404, 416–17 (5th Cir. 2022) (internal quotations and citations omitted).

Here, the summary judgment evidence, including the officers' BWC footage, shows that, as officers approached Brown, they issued multiple, strong (and profane) verbal commands for Brown to "get down" and "give [them] [his] hands." *See* Def.'s App. 186, 189. Brown did not immediately comply, and Lyons and the other officers forced Brown to the ground. *See id.* Brown writhed on the ground and pulled his hands away from the officers, resisting their attempts to put him in handcuffs. *See id.* Lyons struck Brown—once—in the face and placed his knee briefly on the back of Brown's neck. *See id.*; *see also* Def.'s App. 192. Once Brown was in handcuffs and stopped struggling, Lyons discontinued all use of force. *See* Def.'s App. 186, 187, 189.

Brown has not identified any controlling authority establishing that an officer acting under similar circumstances was held to have violated the Constitution. And the facts here do not present the type of "obvious" case that would establish the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. Brown has thus failed to meet his burden to show that it was clearly established at the time of his arrest that Lyons's use of force was unlawful.

Accordingly, Lyons is entitled to qualified immunity on Brown's Fourth Amendment claim.

## Recommendation

Based on the summary judgment record, a reasonable jury could not find that Lyons's conduct violated clearly established law—or that Lyons used excessive force against Brown—so the District Judge should grant Lyons's motion for summary judgment (ECF No. 67) and dismiss Brown's remaining claims with prejudice.

**SO RECOMMENDED**.

July 30, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district judge, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).